UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RUSSELL REEVES and KATHRYN HARRISON, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil No. 19-11474-LTS |
| TOWN OF HINGHAM, POLICE CHIEF GLENN OLSSON, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 14)

February 14, 2020

SOROKIN, J.

Russell Reeves and Kathryn Harrison suffered a parent's worst nightmare. Their son, Austin, died of a self-inflicted gunshot wound inside their family home with dozens of armed law enforcement officers arrayed around the perimeter of the house. The officers were present not because Austin had done something wrong—he had not—but because his parents' worry for his safety led them to call the police for assistance. Mr. Reeves and Ms. Harrison filed this lawsuit seeking damages from the Town, as well as some of its police officers, for this tragedy.

Now pending before the Court is Defendants' joint motion to dismiss the Complaint filed by pro se Plaintiffs Russell Reeves and Kathryn Harrison, alleging violations of 42 U.S.C. § 1983 and various state laws. Doc. No. 14. For various reasons, the law does not allow this lawsuit to go forward, despite the tremendous loss suffered by Mr. Reeves and Ms. Harrison. Accordingly, Defendants' motion is ALLOWED and the Complaint is DISMISSED.

I.   BACKGROUND

Plaintiffs Reeves and Harrison brought this lawsuit, in their own names, in the wake of their son's tragic suicide. According to the Complaint, Austin, the plaintiffs' son, committed suicide while inside the family's residence on July 8, 2017. Doc. No. 1 at 28.[1] That day, Austin's girlfriend contacted the Hingham Police Department, notifying authorities that Austin was in possession of a firearm and planned to kill himself. Id. at 26. After receiving this call, the Hingham Police Department contacted Plaintiff Reeves and asked him whether his weapons were secure and whether Austin could be armed. Id. Plaintiff Reeves informed police that his weapons were secure and that Austin did not have access to a gun. Id.

Shortly thereafter, Austin arrived home from work; according to the Complaint, Austin became agitated when his parents told him about their earlier call with the Hingham Police. Id. Some time later, Plaintiff Reeves became convinced that Austin both had a gun and was going to hurt himself, so he called the Hingham Police, who responded by dispatching three officers to the Plaintiffs' residence. Id. According to the Complaint, Hingham Police officers moved Plaintiffs Reeves and Harrison away from their home, eventually placing them in a "guarded van." Id. Simultaneously, the Hingham Police Department called the Metropolitan Law Enforcement Council, or METRO-LEC, to deploy to the scene. Id. at 26–27. Once METRO-LEC officers arrived, Plaintiffs Reeves and Harrison allege that over one hundred law enforcement officers were "within eyesight of Austin's room." Id. at 27. According to the Complaint, Plaintiffs Reeves and Harrison began to vociferously object to the presence of an "invasion army of police" around their home and became increasingly worried that the law

---

[1] The Court recounts relevant facts as alleged in the Complaint, "accept[ing] as true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in favor of the plaintiffs." Gargano Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

enforcement response would escalate, rather than diffuse, the situation.  Id.  The Complaint further alleges that Plaintiffs Reeves and Harrison were "forcibly prevented" from leaving the van where they had been placed and that the van's radio was positioned and controlled by officers such that Reeves and Harrison were prevented from hearing updates on the law enforcement response.  Id. at 28.  The next morning, the Complaint alleges, law enforcement officers entered Plaintiffs Reeves' and Harrison's home where they found Austin deceased from a self-inflicted gunshot wound.  Id.

While much of the Complaint recounts a long procedural history of civil and criminal litigation involving Plaintiff Reeves and various Town of Hingham public officials, see id. at 4–25, the Complaint also contains two allegations that directly relate to Austin's tragic death: (1) that the Hingham Police Department and its current and former chiefs have maintained a policy to "get Reeves" by providing officers with a "cash bounty," a policy that Plaintiff Reeves alleges was developed "to punish him for his publications [and] ultimately led to the aggravated death of his son, Austin," id. at 2; and (2) that Defendants conspired to violate provisions of the Hingham Police Department's Policies and Procedures that relate to handling the mentally ill, id. at 30.[2]

II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must provide fair notice to the defendants and state a facially plausible legal claim."  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  "The plausibility standard is not akin to a

---

[2] Insofar as the Complaint seeks reconsideration of claims fully litigated before another session of this Court, the First Circuit, and various Massachusetts state courts, those claims are barred by the doctrine of res judicata.  See O'Neill v. City Manager of Cambridge, 700 N.E.2d 530, 532 (Mass. 1998) ("Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action.").

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). While Rule 12(b)(6)'s demands are modest, it "is not entirely a toothless tiger." Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (noting that the "threshold for stating a claim may be low, but it is real."). "The pleader must show an entitlement to relief by including in the complaint enough factual material to raise a right to relief above the speculative level if the facts alleged are accepted as true." Faculty, Alumni, & Students Opposed to Racial Preferences v. Harvard Law Review Ass'n, No. CV 18-12105-LTS, 2019 WL 3754023, at *4 (D. Mass. Aug. 8, 2019) (quoting Ocasio-Hernandez, 640 F.3d at 12) (internal quotation marks omitted).

III. DISCUSSION

Accepting Plaintiffs Reeves' and Harrison's allegations as true, their Complaint fails to state a section 1983 claim for at least four reasons.[3]

First, the Complaint contains insufficient factual allegations to plausibly allege that either the individual defendants or the Town of Hingham conspired to deprive Reeves and Harrison of their constitutional rights. Indeed, the Complaint merely contains conclusory allegations that Defendants Olsson, Healy, and Alexiades "were involved in the creation" of the Police

---

[3] In considering the Complaint's section 1983 claims, the Court only addresses allegations that Defendants' actions violated Reeves' and Harrison's Fourteenth Amendment Due Process Clause rights. Doc. No. 1 at 31. In various sections, the Complaint alleges that the Plaintiffs' placement in a "guarded van" constituted an illegal false imprisonment. See id. at 27. Even liberally construed, the Complaint does not allege that these actions implicated the Plaintiffs' Fourth Amendment right to be free from unreasonable seizure. Given the sparse factual allegations contained in the Complaint, at most it plausibly alleges that law enforcement officers prevented Reeves and Harrison from re-entering or approaching their home during the law enforcement response, not that Reeves and Harrison were imprisoned, detained, or in custody in the guarded van.

4

Department manual that was allegedly violated, and that these Defendants "conspired to escalate maximum actions when their policies and orders required de-escalation." Doc. No. 1 at 29. These allegations are "unadorned by any factual assertions that might lend it plausibility," thus depriving the Defendants of the minimal fair notice demanded by the Federal Rules of Civil Procedure. A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). Without factual allegations that, inter alia, specify the nature of Defendants' purported conspiracy and tie individual Defendants to decisions that allegedly harmed Reeves and Harrison, the Plaintiffs cannot "nudge[] [their] claims . . . across the line from conceivable to plausible." Iqbal, 556 U.S. at 680. Similarly, the Complaint contains no plausible factual allegations that local law enforcement's response before Austin's tragic death was in any way related to an alleged informal retaliatory policy set by the Town or any of its current or past officials. Id. at 678 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Second, even if the Complaint contained sufficient factual allegations to connect Defendants' actions to the alleged unlawful activity, Reeves and Harrison's section 1983 claim would fail as a matter of law. This is so because "[t]he Supreme Court has stated that as a general matter, [the government's] 'failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" Rivera v. Rhode Island, 402 F.3d 27, 34 (1st Cir. 2005) (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)). Courts, including the First Circuit, recognize only two exceptions to this general proposition: (1) there is an "affirmative, constitutional duty to protect . . . when the state so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs," Rivera, 402 F.3d at 34 (internal quotation marks

omitted); and (2) a so-called "state created danger" exception exists "where the government affirmatively acts to increase the threat to an individual of third-party private harm or prevents that individual from receiving assistance." Coyne v. Cronin, 386 F.3d 280, 287 (1st Cir. 2004).

Here, the first exception is inapplicable, as Austin Reeves was not, for example, "incarcerated or . . . involuntarily committed to the custody of the state." Rivera, 402 F.3d at 34. And the rarely applied "state created exception" is likewise inapposite; indeed, as courts have previously held in similar circumstances, "the failure to provide better crisis intervention services," does not rise to the level of a constitutional violation when someone "ultimately cause[s] [their] own death." Ferreira v. City of E. Providence, 568 F. Supp. 2d 197, 211 (D.R.I. 2008); Coscia v. Town of Pembroke, Mass., 659 F.3d 37, 39 (1st Cir. 2011) (Souter, J.) (noting that the First Circuit has "been apprised of no case recognizing due process liability for suicide based on police conduct except for death during custody."). Due process liability cannot lie where, as here, the factual allegations in the Complaint—aside from conclusory statements—indicate that "the officers' rescue attempt was not a deliberate effort to place [Austin] in harm's way, but rather to remove [him] from the danger that [he himself] created." Id. at 211–12. Thus, even if Plaintiffs' allegations were non-conclusory, they could not maintain a section 1983 claim for law enforcement officials' failure to prevent Austin's tragic suicide. The Court notes that this is true with respect to Plaintiffs Reeves' and Harrison's own section 1983 claims, as well as any

claim brought on behalf of Austin's estate for failure to prevent his suicide, if such a claim were properly brought.[4]

Third, Reeves' and Harrison's section 1983 claims are thwarted because their injury—the loss of their son to suicide—does not constitute deprivation of a personal right that is cognizable under section 1983. Indeed, "First Circuit case law holds that surviving family members cannot recover in an action brought under § 1983 for deprivation of rights secured by the federal constitution for their own damages for the victim's death unless the unconstitutional action was aimed at the family relationship." Farrah v. Gondella, No. CIV.A.07-12075-RGS, 2008 WL 2788090, at *2 n.2 (D. Mass. July 16, 2008) (quoting Robles–Vazquez v. Garcia, 110 F.3d 204, 206, n.4 (1st Cir.1997)). Here, the allegations do not concern state action that interfered with "private family decisions" or "change[d] or affect[ed] the relationship of parent and child in furtherance of a legitimate state interest." Manarite By & Through Manarite v. City of Springfield, 957 F.2d 953, 960 (1st Cir. 1992). Simply put, "[t]he First Circuit has refused to find a constitutionally protected interest for family members in the companionship of a victim who suffers a § 1983 violation." Figueroa-Lopez v. Hilerio-Padilla, 199 F. Supp. 2d 1, 4–5

---

[4] In the caption of their Complaint, Plaintiffs identify Reeves and Harrison as the sole plaintiffs; however, they later identify their late son Austin as one of the plaintiffs. Doc. No. 1 at 3. The Complaint does not, at any time, state that Plaintiffs Reeves and Harrison have brought this action on behalf of Austin's estate. As Defendants note, Reeves and Harrison, as pro se plaintiffs, are without legal capacity to pursue section 1983 or state law claims on behalf of their late son's estate. See, e.g., Nordberg v. Town of Charlton, No. CIV.A. 11-40206-FDS, 2012 WL 2990763, at *4 (D. Mass. July 19, 2012) (holding that pro se plaintiff parents of a son who committed suicide were unable to pursue section 1983 claims on behalf of their deceased son); id. ("[E]ven if a plaintiff is the executor of an estate or is otherwise authorized to pursue a decedent's legal claim, he may not do so pro se.").

(D.P.R. 2002). Thus, the Complaint does not state actionable section 1983 claims against the individual or Town of Hingham Defendants.

Fourth, even if the Complaint did plausibly allege that an actionable constitutional violation occurred—which it does not—the Complaint fails to plausibly allege that the Town of Hingham can be held liable under section 1983. To plausibly state a section 1983 claim against the Town of Hingham, Reeves and Harrison are "required to demonstrate both the existence of a policy or custom and a 'direct causal link' between that policy and the alleged constitutional deprivation." Williams v. Bisceglia, 115 F. Supp. 3d 184, 188 (D. Mass. 2015). Here, Reeves and Harrison do not allege that the Hingham Police Department's policy concerning response to mentally ill citizens is itself unconstitutional; rather, they allege—in conclusory fashion—that certain individual Defendants disregarded the Police Department's policy in a such a way that led to Austin's suicide. Given that Reeves and Harrison do not allege that the Town failed to adequately train its officers, cf. City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989), nor do they allege any direct link between an unconstitutional Town policy and the death of their son, the Complaint fails to state a section 1983 claim against the Town.

IV. CONCLUSION

For the foregoing reasons, the motion to dismiss Reeves' and Harrison's section 1983 claims is ALLOWED. Given this dismissal of the Complaint's only federal law claims,[5] the Court must also determine whether to exercise supplemental jurisdiction over the remaining state

---

[5] Insofar as the Complaint aims to state a federal law claim based on 18 U.S.C. § 241 or any other federal criminal law provision, those sections of the United States Code do not afford civil plaintiffs a private right of action. See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir.1989) (stating that only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242); Faust v. Defazio, No. CIV.A. 12-11673-NMG, 2012 WL 5064484, at *1 (D. Mass. Oct. 17, 2012) (holding that "federal courts do not have jurisdiction over criminal cases unless they are prosecuted by the United States Attorney").

8

law claims pursuant to 28 U.S.C. § 1367(c)(3).  See Perkins v. City of Attleboro, 969 F. Supp. 2d 158, 179 (D. Mass. 2013); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996) (finding dismissal of state law claims "appropriate if [a] federal-question claim is eliminated early in the proceedings").  In fact, "it can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts."  Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017). "Where, as here, the federal claims are dismissed at an early stage of the litigation, 'the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims.'" Dew v. City of Bos., 405 F. Supp. 3d 294, 304 (D. Mass. 2019) (quoting Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)).  Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims; for that reason, the Defendants' motion to dismiss the state law claims is ALLOWED.  As the Court has resolved Defendants' motion to dismiss, Plaintiffs' motion for expedited review (Doc. No. 21) is DENIED AS MOOT.

        SO ORDERED.

        /s/ Leo T. Sorokin
        Leo T. Sorokin
        United States District Judge